Argued and submitted November 30, 1988, affirmed June 28, 1989

## SUSAN MARIE BALDWIN,
*Petitioner,*

*v.*

## PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

### (82-487; CA A48172)

776 P2d 577

Ella D. Johnson, Salem, argued the cause and submitted the brief for petitioner.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Petitioner seeks review of an order of the Psychiatric Security Review Board (PSRB) denying her request to be discharged or conditionally released under ORS 161.341(4)[1] and continuing her 1982 commitment to the Oregon State Hospital. She assigns as error PSRB's denial of her motion to apply a 1983 amendment to ORS 161.295(2) to her case. She also assigns as error the Board's finding that she cannot be adequately controlled on conditional release. We affirm.

On January 12, 1982, the court found petitioner not responsible by reason of mental disease or defect for first degree manslaughter committed in 1980 and placed her under PSRB's jurisdiction for twenty years. At the time of her commitment, she was diagnosed as suffering only from "mixed personality disorder."[2]

In 1983, the legislature amended ORS 161.295(2) to exclude personality disorders from the terms "mental disease or defect."[3] At a PSRB hearing on February 19, 1988, petitioner requested that she be discharged, arguing that, because

---

[1] ORS 161.341(4) provides:

"Any person who has been committed to a state hospital designated by the Mental Health Division for custody, care and treatment or another person acting on the person's behalf may apply to the board for an order of discharge or conditional release upon the grounds:

"(a) That the person is no longer affected by mental disease or defect;

"(b) If so affected, that the person no longer presents a substantial danger to others; or

"(c) That the person continues to be affected by a mental disease or defect and would continue to be a danger to others without treatment, but that the person can be adequately controlled and given proper care and treatment if placed on conditional release."

[2] Although PSRB's original commitment order indicated a concern that petitioner might experience a resurgence of "depersonalization disorder," the record makes it clear that she was committed on the basis that she had a personality disorder.

[3] Before the 1983 amendment, ORS 161.295(2) provided:

"(2) As used in chapter 743, Oregon Laws 1971, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

ORS 161.295(2) currently provides:

"*As used in chapter 743, Oregon Laws 1971,* the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, *nor do they include any abnormality constituting solely a personality disorder.*" (Emphasis supplied.)

her treating physician diagnosed her as suffering only from a personality disorder, she no longer had a "mental disease or defect" that could subject her to PSRB's jurisdiction. ORS 161.341(4). She also moved that PSRB disregard OAR 859-10-005(4)(b) as contrary to law, because that rule excludes "personality disorders" from the category of "mental disease or defect" only for offenses committed on or after January 1, 1984, the effective date of the 1983 amendment.[4] Finally, as an alternative to discharge, she presented a plan for her conditional release. PSRB denied petitioner's motion to disregard OAR 859-10-005(4)(b) at the hearing. On February 26, 1988, it issued an order finding, in part, that petitioner continues to be "affected by a mental disease or defect which, when active, renders her a substantial danger to others," and that "[s]upervision and treatment necessary for [her] conditional release are not available in the community."

**1.** Petitioner does not contend that her personality disorder did not constitute a "mental disease or defect" at the time of her commitment. She simply argues that the plain language of ORS 161.295(2) now excludes that condition from the legal definition of "mental disease or defect" and that, therefore, she no longer can be held on account of it.[5] Thus,

---

[4] OAR 859-10-005(4)(b) provides:

"For offenses committed on or after January 1, 1984, the term 'mental disease or defect' does not include any abnormality constituting solely a personality disorder."

[5] Petitioner points out that ORS 161.295(2) originally provided, in part: "*As used in this Act,* the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." (Emphasis supplied.) She contends that the language, "As used in chapter 743, Oregon Laws 1971," shows that the legislature intended the 1983 amendment's new exclusion for personality disorders to relate back to 1971. Moreover, she argues, PSRB's chairperson warned the 1983 House Subcommittee on Judiciary that defense attorneys would argue that the exclusion was retroactive. Because the legislature passed the amendment despite that testimony, she argues, it must have intended it to apply retroactively.

In fact, however, most of the statutes governing PSRB's jurisdiction and functions were *not* enacted by Oregon Laws 1971, chapter 743, but by Oregon Laws 1979, chapter 867, or Oregon Laws 1977, chapter 380. *See, e.g.,* ORS 161.327; ORS 161.341; ORS 161.351. Read literally, the amendment does not apply to the statutes under which PSRB retained jurisdiction over petitioner; it simply sets forth who may invoke the insanity defense for offenses committed on or after January 1, 1984, its effective date. OAR 859-10-005(4)(b) applies the statute as intended. The testimony of the PSRB chairperson before the house subcommittee does not change the analysis. Testimony before a legislative committee of a non-member of the legislature may have little or no significance in statutory interpretation. *Henthorne v. Grand Prairie School Dist.,* 287 Or 683, 691 n 5, 601 P2d 1243 (1979).

the issue is whether the legislature intended the 1983 amendment to withdraw PSRB's jurisdiction over persons committed on the basis of a personality disorder before January 1, 1984.

Clearly, it did not. ORS 161.295(1) provides an affirmative defense to criminal liability if, "as a result of mental disease or defect," a person "lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law." *See also* ORS 161.305. Generally, if a person succeeds in that defense and the court finds that she "is affected by mental disease or defect and presents a substantial danger to others requiring commitment," it enters the appropriate judgment and places her under the jurisdiction of PSRB. ORS 161.327.[6] Once committed to a state hospital, a person may seek discharge on the ground that she is *"no longer affected* by mental disease or defect[.]" ORS 161.341(4)(a); *see also* ORS 161.351(1). (Emphasis supplied.)[7] If, in a discharge hearing, "the board finds that the person *has not recovered* from the mental disease or defect and is a substantial danger to others and cannot be adequately controlled if conditionally released * * *, the board shall order the person * * * retained in a state hospital * * *." ORS 161.346(1)(c). (Emphasis supplied.)

Read in context, the legislature clearly intended that, before being discharged under ORS 161.341(4)(a), a person must no longer be affected by the condition that made her dangerous, that is, the mental disease or defect *that originally caused her to be placed under PSRB's jurisdiction.* Applying ORS 161.295(2), as petitioner would, not only would permit her to be released without such a showing; it would make the

---

[6] ORS 161.327(1) provides, in part:

"Following the entry of a judgment pursuant to ORS 161.319 and the dispositional determination under ORS 161.325, if the court finds that the person would have been guilty of a felony, or of a misdemeanor during a criminal episode in the course of which the person caused physical injury or risk of physical injury to another, and if the court finds by a preponderance of the evidence that the person is affected by mental disease or defect and presents a substantial danger to others requiring commitment to a state mental hospital designated by the Mental Health Division or conditional release, the court shall order the person placed under the jurisdiction of the Psychiatric Security Review Board for care and treatment."

[7] Although there have been some changes in the wording of the statutes dealing with commitment to PSRB jurisdiction, the features of the statutory scheme described here also applied when petitioner was committed.

reason for her commitment the reason for her release. Petitioner's argument would require us to ignore the statutory scheme.[8] *See, generally, Adams v. Psychiatric Review Bd.,* 290 Or 273, 280, 621 P2d 572 (1980). The point is that petitioner was committed because she had a mental disease or defect that made her dangerous to others; she still has that malady, and she is still dangerous to others. The legislature did not intend ORS 161.295(2) to require her discharge.[9]

**2.**     Petitioner also contends that OAR 859-10-005(4)(b) violates the equal treatment guarantees under the Fourteenth Amendment and Article I, section 20. She reasons that, under the rule, a person committed to PSRB's jurisdiction after January 1, 1984, would be eligible for early discharge if she was diagnosed as having only a personality disorder, but petitioner

---

[8] Interpreting the statute to apply here would have other undesirable and unintended results. For example, under the *ex post facto* provisions of the Oregon and federal constitutions, a defendant charged with a criminal act occurring before the amendment could assert that she was entitled to invoke the defense on the basis of a personality disorder. However, if that individual were tried *after* the amendment's effective date, she could not be committed to PSRB's jurisdiction. She could therefore be neither committed *nor* convicted. More significantly, the legislature provided in ORS 161.327(5):

"In determining whether a person should be committed to a state hospital or conditionally released the court shall have as its primary concern the protection of society."

If the statute is applied retroactively, *every* person who successfully invoked the insanity defense on the basis of a personality disorder would have to be released from PSRB's jurisdiction after January 1, 1984, regardless of the danger to society. The legislature could not have intended that result.

[9] The legislative history of ORS 161.295(2) confirms that view. As originally drafted, subsection (2), which excluded "an abnormality manifested only by repeated criminal or otherwise antisocial conduct" from the terms "mental disease or defect," was intended to prevent repeat offenders from qualifying for the defense merely by being labeled psychopaths. *Commentary to Proposed Oregon Criminal Code* 34-35 (1970). The legislature's addition of "personality disorders" to the exclusion in subsection (2) simply broadened the category of individuals to which that concern applied. Thus, the 1983 amendment did not remove PSRB's jurisdiction over individuals who previously had chosen to assert the defense, but, rather, narrowed the category of individuals who could assert it in the future. Indeed, given the legislature's desire to hold individuals more strictly responsible for their acts, releasing petitioner on the basis of the amendment would directly contravene its intended effect. It is undoubtedly for that reason that the legislature provided in Oregon Laws 1983, chapter 800, section 17:

"Section 16 of this Act *and the amendments to ORS 161.295,* 161.305, 161.309, 161.319, 161.325, 161.327, 161.336, 161.341, 161.365 and 162.155 by this Act shall apply only to offenses committed on or after January 1, 1984. In the case of offenses committed before January 1, 1984, those sections shall apply in the same manner as if this Act had not been enacted." (Emphasis supplied.)

could never qualify for early release. She argues that, because the rule creates an irrational distinction between individuals committed for offenses committed before January 1, 1984, and individuals committed on or after that date, it is unconstitutional.

The problem with that analysis is that the two sorts of individuals are not similarly situated. A person who committed a criminal act after December 31, 1983, and suffers only from a personality disorder would qualify for early discharge because that was never a basis for commitment in the first place. Had a personality disorder been the only condition from which she suffered, she would have faced criminal consequences, because her condition is not encompassed by the legal excuse. By contrast, petitioner's personality disorder was the basis both of her commitment *and* of her avoidance of criminal responsibility. It is rational to require as a condition of her discharge that she no longer suffer from the disease that caused her to be committed.

**3.** The next issue is whether there was substantial evidence to support PSRB's finding that petitioner could not adequately be controlled on conditional release. According to petitioner, she had done well on a previous conditional release. Moreover, she outlined a new plan in which she would work in Portland as a volunteer at Burnside Community Projects and attend school. She argues that she met her burden of proving that she could be adequately controlled on conditional release and that PSRB's decision to the contrary is not supported by substantial evidence.

Under ORS 161.341(4)(c), a person committed to a state mental hospital may apply to PSRB for a conditional release on the ground that, although she continues to be affected by mental disease or defect and to present a substantial danger to herself or others, she may be adequately controlled on conditional release with proper care and treatment. The burden is on the applicant to prove her fitness for conditional release by a preponderance of the evidence. OAR 859-50-055.[10] We review PSRB's order to determine if it is

---

[10] OAR 859-50-055(4) states:

"Hospital patient's request for conditional release or discharge under ORS 161.341(4): The person has the burden of proving his or her fitness for conditional release or discharge."

supported by substantial evidence in the record as a whole. ORS 183.482(8)(c);[11] *Valleur v. Psychiatric Review Board,* 43 Or App 843, 845, 604 P2d 439 (1979).

PSRB based its decision that adequate supervision and treatment for petitioner are not available in the community on the uncontroverted testimony and reports of Dr. Reichlin, her treating physician, who testified that conditional release would not be appropriate until she can cooperate more fully with the treatment program and begin to show less negativism. He viewed petitioner as dangerous to men and stated that he could not recommend conditional release until she is able to have "some handle on her * * * relationship with men." Moreover, he stated that petitioner "would be difficult to manage in a community placement because of her tendency to be evasive, her distorting of the facts, and her ascribing blame to others." Given that, and other evidence before PSRB, a reasonable person could find that petitioner was not fit for conditional release.

Affirmed.

---

[11] ORS 183.482(8)(c) provides:

"The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."