Argued and submitted April 3, the decision of the Court of Appeals reversed and case remanded to Psychiatric Security Review Board for further consideration October 10, 1991

EMMETT WOODROW MARTIN,
*Petitioner on Review,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent on Review.*

(PSRB 89-1015; CA A61474; SC S37641)

818 P2d 1264

Harris S. Matarazzo, Salem, argued the cause and filed the petition for petitioner on review.

Diane Sue Lefkow, Assistant Attorney General, Salem, argued the cause for respondent on review.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioner seeks review of a Court of Appeals' decision that affirmed an order of the Psychiatric Security Review Board (PSRB). PSRB concluded that petitioner continued to suffer from a mental disease or defect and, therefore, that he continued to be under the agency's jurisdiction. *Martin v. PSRB,* 103 Or App 385, 797 P2d 401 (1990). The sole issue presented is whether there is substantial evidence in the record to support PSRB's finding that petitioner was affected by a mental disease or defect at the time of the hearing. We review under ORS 183.482(8). ORS 161.385(8)(c). Because we conclude that the evidence on which PSRB expressly relied in making its finding was not substantial, we reverse and remand to the agency for further consideration.

### FACTS

In December 1987, petitioner was indicted for kidnapping (2 counts), robbery (2 counts), assault (2 counts), sexual penetration with a foreign object, and ex-convict in possession of a firearm, all felonies. In January 1988, Dr. Gardner performed a psychiatric examination and evaluation of petitioner (exhibit 9). Gardner reported that petitioner did not "evidence a mental disease or defect which would tend to exculpate him under Oregon statutes," understood the charges against him, and could participate in own defense.

In March 1988, Dr. Gardner re-examined petitioner (exhibit 10). At that time, Gardner reported that petitioner possessed "a mental disease of such magnitude to interfere with his ability to perceive the criminality of his behavior and to conform his behavior to the requirements of the law." Gardner's diagnosis was "Delusional Disorder; Schizotypal Personality Disorder." Gardner added, however, that petitioner understood the charges against him and could participate in his defense.

After a "stipulated facts" trial to the court on January 31, 1989, petitioner was found "guilty except for insanity" of kidnapping and assault. The remaining six charges were dismissed by the trial court. *See* ORS 161.295(1).[1] That

---

[1] ORS 161.295(1) provides:

"A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial

same day, the trial court found that petitioner presently was affected by mental disease or defect and that he presented a substantial danger to others requiring commitment to a state mental hospital. As a result, petitioner was placed under PSRB's jurisdiction for a maximum period of 30 years and was committed to the Oregon State Hospital (OSH). *See* ORS 161.327.[2]

In a February 9, 1989, case summary (exhibit 14), Dr. Meyer, petitioner's OSH treating psychiatrist, provisionally diagnosed petitioner as "paranoid personality." Meyer thought that petitioner could be a "potential danger" to the public, adding that "[t]he basis for this, however, seems to be a personality disorder and not a major mental illness or major affective disorder." Meyer recommended that petitioner "be monitored by the Corrections system and [that he] not be involved in inpatient treatment in the Mental Health Division."

In a February 14 progress report, Meyer noted that petitioner's OSH treatment team did not think petitioner was appropriately placed at OSH, "because he does not have major mental illness." In a March 27 progress report, Meyer noted that the treatment team did not see petitioner "as having a major mental illness at this time." In an April 7

capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law."

[2] ORS 161.327 provides in part:

"(1) Following the entry of a judgment pursuant to ORS 161.319 and the dispositional determination under ORS 161.325, if the court finds that the person would have been guilty of a felony, * * * and if the court finds by a preponderance of the evidence that the person is affected by mental disease or defect and presents a substantial danger to others requiring commitment to a state mental hospital * * * or conditional release, the court shall order the person placed under the jurisdiction of the Psychiatric Security Review Board for care and treatment. The period of jurisdiction of the board shall be equal to the maximum sentence provided by statute for which the person was found guilty except for insanity.

"(2) The court shall determine whether the person should be committed to a state hospital * * * or conditionally released pending any hearing before the board as follows:

"(a) If the court finds that the person presents a substantial danger to others and is not a proper subject for conditional release, the court shall order the person committed to a state hospital * * * for custody, care and treatment pending hearing before the board in accordance with ORS 161.341 to 161.351."

progress report, Meyer opined that "[petitioner] suffers from paranoid personality disorder with possible psychotic decompensation *in the past.* He has been stable on Ward 48B, with no evidence of psychosis." (Emphasis supplied.)

On April 7, 1989, PSRB held a hearing to determine whether petitioner should be discharged, conditionally released, or retained in a state hospital. ORS 161.341. At the hearing, the state opposed petitioner's discharge and also opposed his conditional release on the terms that he proposed. The state took no position on a conditional release "if a plan that provided adequate supervision were offered." Without objection, PSRB received 30 exhibits in evidence. PSRB also heard the testimony of Dr. Meyer, Dr. Johansen, an OSH clinical psychologist, and other witnesses, including petitioner. Petitioner does not challenge the admissibility of any of the evidence in the record. He challenges only the *substantiality* of the evidence to support PSRB's finding that he "is affected by a mental disease or defect."

At the hearing, Dr. Meyer characterized petitioner's condition as a "paranoid personality disorder." Petitioner's attorney asked Meyer, "Do you believe [petitioner] suffers *at this time* from a mental disease or defect as defined by the Oregon statutes?" Meyer replied, *"Not at this time."* (Emphasis supplied.) Meyer added that he had discussed his diagnosis with Dr. Shannon, another OSH psychiatrist, who agreed with it. Later, petitioner's attorney asked Dr. Johansen "Do you believe that [petitioner] presently suffers from a mental disease or defect as defined by the Oregon statutes?" Johansen replied, "No, I do not." In response to a question from a PSRB member, Johansen stated that he did not have "any clear evidence" that petitioner had a tendency to experience "episodic psychotic disorder, delusional disorder at times, given the right stress." Still, Johansen did not feel "absolutely confident to say no."

Following the hearing, the three PSRB members present were unable to reach a consensus, and the hearing was continued to permit the other two PSRB members to review the exhibits and the recorded transcript before voting. Thereafter, PSRB found as facts that petitioner continued to be "affected by a mental disease or defect" that "is now in a

state of partial remission."[3] Based on all its findings, PSRB concluded as a matter of law that:

"1. [Petitioner], being affected by a mental disease or defect which, when active, renders him a substantial danger to others, is under the jurisdiction of [PSRB]."

PSRB ordered that petitioner "be continued in commitment at a state hospital * * * for care and treatment pending the availability of a verified conditional release plan." Petitioner sought judicial review of PSRB's final order. On review, the Court of Appeals affirmed. *Martin v. PSRB, supra.*

We allowed review to examine whether there is substantial evidence in the record to support PSRB's finding that petitioner continued to be affected by a mental disease or defect at the time of the hearing. Petitioner argues that at the time of the hearing he was suffering from a "personality disorder," which is not a mental disease or defect, ORS 161.295(2),[4] and, therefore, that he was entitled to a discharge. He relies primarily on the reports of Drs. Meyer and Shannon, and Dr. Johansen's psychological assessment, and on the testimony of Drs. Meyer and Johansen at the hearing.

---

[3] PSRB found in part:

"2. [Petitioner] is affected by a mental disease or defect, as demonstrated by the underlying facts shown by the evidence, including the reports of Hugh Gardner, M.D., as found in Exhibits 9 and 10, and the report of John E. Meyer, M.D., as found in Exhibit 14. The Board carefully considered the testimony of Clifford Johansen, Ph.D., to the effect that [petitioner] suffers from a personality disorder rather than a major mental illness; however, the Board was more persuaded by the testimony of John E. Meyer, M.D., at the hearing and the reports of Dr. Gardner. The Board also considered the report of Alice Shannon, M.D., which diagnoses [petitioner] as suffering from alcohol abuse, in remission, by history and possible post-traumatic stress disorder delayed. However, again, the Board was persuaded by the report of Dr. Gardner which is found in Exhibit 10.

"3. Although [petitioner's] mental disease or defect is now in a state of partial remission, it does require supervision because with reasonable medical probability, it occasionally will become active and when active, it will render [petitioner] a danger to others. This conclusion is based on the underlying facts shown by the evidence, particularly the circumstances surrounding the crimes which resulted in his placement under the jurisdiction of the Psychiatric Security Review Board, as noted in Exhibit 6; his criminal history, as noted in Exhibit 13; as well as the information contained in Exhibits 3, 11 and 14."

[4] ORS 161.295(2) provides in part:

"[T]he terms 'mental disease or defect' do not include * * * any abnormality constituting solely a personality disorder."

All three experts opined that petitioner suffered from a personality disorder, but not from a mental disease or defect.

The state argues that in April 1989 petitioner continued to suffer from the same mental disease or defect that had relieved him of criminal responsibility for kidnapping and assault at his January 1989 trial. We understand the state's theory to be that petitioner's mental disease or defect was in a state of remission. *See* ORS 161.327(3); 161.336(3); 161.351(2) (a person affected by a mental disease or defect in a state of remission is considered to have a mental disease or defect requiring supervision when the disease may, with reasonable medical probability, occasionally become active and, when active, render the person a danger to others). The state relies primarily on Dr. Gardner's March 1988 report; on Dr. Meyer's report and testimony; on Dr. Johansen's psychological assessment and testimony; and on police reports of petitioner's 1987 crimes and police observations of him while he was in custody pending trial.

■   ORS 183.482(8)(c) provides that this court:

"shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

If PSRB's finding is supported by substantial evidence in the record, it must be sustained. ORS 161.385(8)(c); 183.482(8)(c). We review any factfinding for its legal correctness, not for whether we agree with it.

■   ORS 161.346(3) provides that, in conducting a hearing:

"[PSRB] shall consider all evidence available to it which is material, relevant and reliable regarding the issues before the board. Such evidence may include but is not limited to the record of trial, the information supplied by the attorney representing the state or by any other interested party, including the person, and information concerning the person's mental condition and the entire psychiatric and criminal history of the person. All evidence of a type commonly

relied upon by reasonably prudent persons in the conduct of their serious affairs shall be admissible at the hearings."[5]

*See* OAR 859-50-030 (similar).

### ANALYSIS

■       In its opinion affirming PSRB's final order, the Court of Appeals characterized petitioner's argument as follows:

"Petitioner does not contend that the mental condition that he claimed at his trial, and which resulted in his commitment, no longer exists or has changed; he merely challenges the classification of his condition, claiming that it is, and always has been, a personality disorder rather than a mental disease or defect." *Martin v. PSRB, supra,* 103 Or App at 388.

The court viewed this argument to be "an impermissible collateral attack" on the determination that was made by the trial court that ordered petitioner's original commitment to PSRB after his January 1989 conviction. We, however, do not understand that to be petitioner's argument.

During his opening statement at the hearing, petitioner's attorney clearly stated his position: "I think there is insufficient evidence in the record to indicate that [petitioner] suffers from a mental disease or defect." He asked that petitioner be "discharged" from PSRB's jurisdiction. In his Court of Appeals brief, petitioner argued that the burden was on the state to prove that he continued to be affected by a mental disease or defect at the time of the hearing. In his petition for review, petitioner states that he "cannot, and does not, contest * * * that he was properly placed under the jurisdiction of [PSRB] by the [trial court]." Thus, petitioner does not argue that he was not suffering from a mental disease or defect in January 1989.

---

[5] PSRB's members must evaluate the evidence found in the record. In so doing, they may employ their experience and expertise to evaluate and understand the officially noticed facts and evidence offered and made part of the record. ORS 182.450(2), (4). PSRB's members, however, may not use their special knowledge as a substitute for evidence presented at a hearing. *See Rolfe v. Psychiatric Security Review Board,* 53 Or App 941, 948-49, 633 P2d 846, *rev den* 292 Or 334 (1981) (the evaluation of evidence is a necessary part of PSRB's duties; the insertion into the record of new evidence is impermissible).

Petitioner first argues that, contrary to statements in PSRB's order, Dr. Meyer's report and testimony at the hearing do not support PSRB's finding that petitioner continued to be affected by a mental disease or defect at the time of the hearing. We agree. For example, in exhibit 14, written in February 1989, Meyer states:

"[Petitioner] is a person, because of his feelings of being abused, nonsupported, persecuted and the anger and anxiety that accompanies these when he attempts to do something about these feelings, he can provide a potential danger to the public. *The basis for this, however, seems to be a personality disorder and not a major mental illness such as a psychosis or major affective disorder.* For this reason and the reason that he has apparently done well on probation in the past and has spent some jail time before, I would recommend that he be monitored by the Correction system and not be involved in inpatient treatment in the Mental Health Division." (Emphasis supplied.)

More importantly, Meyer testified unequivocally at the hearing that he did not believe that petitioner suffered from a mental disease or defect at that time. He also stated that Dr. Shannon agreed with his diagnosis.

Meyer further testified that a paranoid personality disorder can "decompensate," *i.e.*, "deteriorate into a psychotic state," and that there was a "possibility [that petitioner] had experienced some psychotic decompensation in the past." Meyer added, however, "I'm not sure that he has actually decompensated and gotten psychotic." As we understand it, "decompensation" is the deterioration of an individual's mental condition from one state into another, qualitatively worse, state.[6]

Because the relevant inquiry under ORS 161.327(1) (procedure following finding of "guilty except for insanity") was whether petitioner was affected by a mental disease or defect at the time of sentencing, PSRB's finding in this case is not supported if the evidence shows only that at the time of the hearing petitioner suffered from a personality disorder accompanied by a *past or future possibility of decompensation*

---

[6] Stedman's Medical Dictionary 364 (4th ed 1976), defines decompensation as "[t]he appearance or exacerbation of a mental disorder due to failure of defense mechanisms."

to mental disease or defect. Conversely, if the evidence shows that petitioner continued to be affected by a mental disease or defect *in a state of remission,* petitioner was affected by a mental disease or defect for the purposes of the statutory scheme.[7] ORS 161.351(2). We conclude that Dr. Meyer's report and his testimony at the hearing do not support PSRB's finding that petitioner was affected by a mental disease or defect at the time of the hearing. That evidence appears to us to support petitioner's position.

Petitioner next argues that Dr. Gardner's March 1988 report, which concluded that petitioner was suffering from a mental disease, should be disregarded, because Gardner had concluded in January 1988 that petitioner suffered only from a personality disorder and, thus, Gardner's conclusions cancel each other out. Here, we disagree with petitioner. Gardner's reports were written in sequence, and PSRB was entitled to read them in that context. Gardner qualified his initial diagnosis as follows:

> "It is * * * my opinion that [petitioner] does not evidence a mental disease or defect which would tend to exculpate him under Oregon statutes. However, there is some question about his ability to conform his conduct; which question could be better answered after a longitudinal-type evaluation. It would be my opinion that this would be best served by an additional interview by myself with [petitioner]."

After Gardner re-examined petitioner, he concluded that petitioner was affected by a mental disease or defect. Gardner's second report and his revised diagnosis, after evaluating *all* the pertinent data, is certainly evidence that PSRB was entitled to consider. *See* ORS 161.346(3) (PSRB may consider information concerning petitioner's mental condition and psychiatric history); OAR 859-50-030(4) (same).

---

[7] In contrast, a finding that a person is "guilty except for insanity" of a crime determines only that the person suffered from a mental disease or defect *at the time of the crime. See* ORS 161.295(1) ("A person guilty except for insanity if, as a result of mental disease or defect *at the time of engaging in criminal conduct * * *")* (emphasis supplied). Likewise, a trial court's decision to commit an individual to the jurisdiction of PSRB after the person has been found "guilty except for insanity" of a crime determines only that the person suffered from a mental disease or defect *at the time of the sentencing. See* ORS 161.327(1) (court must find that the person *is* affected by mental disease or defect).

■ Petitioner also argues that, because Dr. Gardner's March 1988 report was written more than a year before PSRB's April 1989 hearing, it does not deserve the *weight* of the more current reports and testimony of Drs. Meyer, Shannon, and Johansen.[8] We decline petitioner's invitation to weigh the evidence anew. That task is exclusively within the province of PSRB, and this court will not substitute its judgment for PSRB's on such a consideration. We also reject petitioner's implicit argument that one expert witness' opinion may not be found to outweigh the contrary opinions of several other experts. PSRB does not count the witnesses; it weighs the evidence.

In discounting Dr. Johansen's report and testimony and Dr. Shannon's report and diagnosis, PSRB stated that it was more persuaded by Dr. Meyer's report and his testimony at the hearing and by Dr. Gardner's reports. Therein lies the difficulty that we have with PSRB's analysis. As noted above, PSRB's reliance on Dr. Meyer's report and his testimony was misplaced. Essentially, that leaves only Dr. Gardner's reports as the expressly identified basis for PSRB's finding. However, contrary to PSRB's finding of fact, Gardner's first report does not show that petitioner continued to be affected by a mental disease or defect at the time of the hearing. It states that petitioner was *not* affected by a mental disease or defect. Likewise, Gardner's second report does not show that petitioner continued to be affected by a mental disease or defect at the time of the hearing. It states only that petitioner suffered from a "delusional disorder" in November 1987, the month of his crimes (or, perhaps, in March 1988, when it was written). PSRB did not reason that a person who was affected by a mental disease or defect in November 1987 necessarily continued to be affected with the same condition in April 1989.

The question is whether the evidence on which PSRB expressly relied supports what the agency did.

---

[8] Petitioner does not argue that Dr. Gardner's reports were inadmissible as too "stale." For that reason, we need not determine whether the passage of time alone might render an inference of continued mental disease or defect unsupported by substantial evidence. *See* OEC 311(1)(w) (a thing once proved to exist continues as long as is usual with things of that nature); *State v. Weller,* 285 Or 457, 461, 591 P2d 732 (1979) (when the prior factual condition is identified, it is up to the parties to introduce evidence on how long it is usual for the previously diagnosed condition to continue). *See also City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 271, 639 P2d 90 (1981) (methodology in reviewing findings that embody inferences).

Although there may be other evidence in the record that could provide a basis for PSRB's order,[9] because we conclude that the evidence on which PSRB expressly relied in finding that petitioner "is" affected by a mental disease or defect is not substantial, the agency must reconsider its order. *See OSAA v. Zohner*, 71 Or App 575, 576, 692 P2d 641 (1984) (generally, when an appellate court determines that an agency has made a finding of fact that is not supported by substantial evidence, and the court concludes that the finding may have influenced a conclusion of law, the court will remand to the agency for reconsideration).

The decision of the Court of Appeals is reversed. The case is remanded to Psychiatric Security Review Board for further consideration.

---

[9] We recognize, of course, that the record contains thirty exhibits and that eight witnesses testified at the hearing. Nevertheless, and notwithstanding PSRB's all encompassing statement that its finding was "shown by the evidence," we conclude that PSRB relied primarily on Dr. Gardner's reports and on Dr. Meyer's report and his testimony at the hearing.