Argued and submitted February 24, affirmed April 21, 1993

JASON OSBORN,
*Petitioner,*

*v.*

PSYCHIATRIC SECURITY
REVIEW BOARD,
*Respondent.*

(89-1033; CA A73938)

851 P2d 614

Harris S. Matarazzo, Portland, argued the cause and filed the brief for petitioner.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Petitioner seeks review of an order of the Psychiatric Security Review Board (PSRB) that continues his commitment at a state hospital. We affirm.

After a hearing at which the state had the burden of proof, *see* ORS 161.341(5), (7)(b), PSRB concluded that petitioner's commitment should continue, because it found, *inter alia*, that he continues to be affected by a mental disease or defect. ORS 161.346(1)(c).[1] Petitioner challenges that finding on the ground that it is not supported by substantial evidence.

PSRB claims that its finding is supported by "the underlying facts shown by the evidence including the uncontroverted expert testimony of John Meyer, M.D., at the hearing, as well as his report as found in Exhibit 32 and the information contained in Exhibits 10 and 11." Meyer testified that petitioner suffers from "borderline intellectual functioning and pedophilia, (inaudible) personality problems." Meyer also made statements in a January 3, 1992, progress note (Exhibit 32) in which he largely reiterated the statements in his oral testimony:

> "[Petitioner] has problems of borderline intellectual functioning, personality problems and aggressive sexual behaviors. He continues to have quite a poor attitude towards treatment. His basic attitude is that he will do whatever he wants to do. He was recently transferred from a medium security ward back to Ward 48B on December 18, 1991. This was after he physically threatened several staff. He also had an altercation in which he attacked another patient with a broom handle. He has also had incidents of sexual suggestiveness with other patients and was suspected of sexually inappropriate behaviors with other patients.

> "Upon returning to 48B, [petitioner] would not attend Treatment Team, stating that he would have to have his lawyer there before he would attend. He spends a great deal of time in his room. He does not socialize a great deal with other patients. His hygiene and living area cleanliness are fair.

---

[1] PSRB found that, without adequate supervision and treatment, petitioner presents a substantial danger to others. It also found that supervision and treatment necessary for a conditional release were not available in the community and that petitioner could not be adequately controlled if he were placed on conditional release. Petitioner does not challenge those findings.

"At this time, we are not recommending any type of release planning. We would recommend that he return to a medium security ward. When his behaviors are stabilized, he could receive an evaluation from the community, if they come up on the ward, in an attempt to give him some guidance. It is somewhat questionable how much further benefit [petitioner] will receive from hospitalization, other than care and custody."

Meyer listed these diagnoses: "V40.00 Borderline I.Q., 302.20 Pedophilia; 301.90 Personality Disorder, Not Otherwise Specified."[2]

■■ Petitioner argues that PSRB was precluded from finding that he is affected by mental disease or defect, because the evidence demonstrates that he suffers from an abnormality constituting solely a personality disorder, which is explicitly excluded from the concept of "mental disease or defect" by ORS 161.295(2).

ORS 161.295 provides:

"(1)  A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.

"(2)  As used in chapter 743, Oregon Laws 1971, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."

The statutes contain no definition of the term "mental disease or defect." The plain language of the statute indicates that abnormalities described in ORS 161.295(2) are excluded from the concept of mental disease or defect, at least as the term is used in Oregon Laws 1971, chapter 743.[3] The statute

---

[2] Another diagnosis is listed, but it is illegible.

[3] In a previous case, we commented that "most" of the laws governing PSRB's jurisdiction and functions came into existence *after* 1971. *Baldwin v. PSRB*, 97 Or App 367, 370 n 5, 776 P2d 577 (1989). That statement is incorrect. *All* of the statutes governing PSRB's jurisdiction and functions were enacted after 1971. The legislature created PSRB and its functions in 1977. Or Laws 1977, ch 380.

also contains no definition of the phrases "abnormality manifested only by repeated criminal or otherwise antisocial conduct" or "abnormality constituting solely a personality disorder."

PSRB is required to determine from time to time whether a person under its jurisdiction continues to be affected by a mental disease or defect. ORS 161.351(1). The legislature has given PSRB authority to promulgate "such interpretive rules as the board deems necessary or appropriate to carry out its statutory responsibilities." ORS 161.387 (1).[4] PSRB exercised its rulemaking authority by promulgating OAR 859-10-005(5) and (6), which define "mental disease" and "mental defect":

> "(5) 'Mental Disease.' Mental disease is defined as any diagnosis of mental disorder which is a significant behavorial [sic] or psychological syndrome or pattern that is associated with distress or disability causing symptoms or impairment in at least one important area of an individual's functioning and is defined in the current Diagnostic and Statistical Manual of Mental Disorders (DSM) of the American Psychiatric Association.

> "(6) 'Mental Defect.' Mental defect is defined as mental retardation, brain damage or other biological dysfunction that is associated with distress or disability causing symptoms or impairment in at least one important area of an individual's functioning and is defined in the current Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association."

PSRB also provides by rule:

> "For offenses committed on or after January 1, 1984, the term 'mental disease or defect' does not include any abnormality constituting solely a personality disorder." OAR 859-10-005(4)(b).

PSRB has not promulgated an administrative rule defining the phrase "abnormality constituting solely a

---

4 ORS 161.387(1) provides:

"The Psychiatric Security Review Board, by rule pursuant to ORS 183.325 to 183.410 and not inconsistent with law, may implement its policies and set out its procedure and practice requirements and may promulgate such interpretive rules as the board deems necessary or appropriate to carry out its statutory responsibilities."

personality disorder." Petitioner argues that we must look at legislative history to determine what the legislature meant by that phrase. The state argues that resort to legislative history is unnecessary, because the legislature's intent is clear from the language itself. The issue is complicated by the absence of a PSRB interpretive rule on the matter. Although PSRB has not expressly defined "personality disorder" by rule, PSRB defines "mental defect" and "mental disease" in part by reference to the current edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association (DSM III-R). The exclusion of any "abnormality constituting solely a personality disorder" from the concept of "mental disease or defect" in OAR 859-10-005(4)(b) persuades us that PSRB likewise defines "personality disorder" in part by reference to the DSM III-R.

The DSM III-R uses the term "personality disorder" to describe what it calls a discrete diagnostic category. The diagnosis of "302.20 pedophilia" is defined in DSM III-R, but is classified under the category "sexual disorders," which is a category different from "personality disorders." PSRB's finding that petitioner continues to be affected by mental disease or defect contains an implicit finding that his abnormality is more than one constituting solely a personality disorder. That implicit finding is supported by substantial evidence.

Affirmed.