Submitted on record and briefs February 4, reversed and remanded with
instructions December 6, 2000

## JASON DAVID OSBORN,
fka Leon Shirten Dronet, Jr.,
*Petitioner,*

*v.*

## PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent.*

## (89-1033; CA A104726)

15 P3d 80

Harris S. Matarazzo filed the brief for petitioner.

Katherine H. Waldo filed the brief for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Petitioner seeks review of an order of the Psychiatric Security Review Board (PSRB) that continued his commitment to the Oregon State Hospital, based on the trial court's finding that he was guilty except for insanity of sodomy in the first degree and sexual abuse in the first degree. Petitioner argues that the PSRB's finding that he is presently affected by the mental disease or defect of pedophilia is not supported by substantial evidence. We agree and therefore reverse.

Petitioner's commitment arose from two incidents in 1989 that involved the same 10-year-old boy. At the time of the offenses, petitioner was 21 years old. After finding him guilty except for insanity, the court committed him to PSRB's jurisdiction for 25 years. Shortly after his arrival at the Oregon State Hospital, he received an Axis I diagnosis of organic brain syndrome, pedophilia, and borderline intellectual functioning and an Axis II diagnosis of mixed personality disorder.[1] Those and subsequent diagnoses were based on the criteria described in the American Psychiatric Association's Diagnostic and Statistical Manual, edition III-R (DSM III-R).

In June 1994, the PSRB conducted a hearing under ORS 161.341(4),[2] at which petitioner sought discharge from

---

[1] Axis I consists of clinical syndromes and V codes (a V code is a behavioral or psychological problem that may appropriately be the focus of treatment although it is not attributable to a mental disorder; borderline intellectual functioning is a V code). Axis II consists of developmental and personality disorders. A personality disorder does not constitute a "mental disease or defect" for purposes of PSRB jurisdiction. ORS 161.295(2).

[2] ORS 161.341(4) provides:

"Any person who has been committed to a state hospital designated by the Mental Health and Developmental Disability Services Division for custody, care and treatment or another person acting on the person's behalf may apply to the board for an order of discharge or conditional release upon the grounds:

"(a) That the person is no longer affected by mental disease or defect;

"(b) If so affected, that the person no longer presents a substantial danger to others; or

"(c) That the person continues to be affected by a mental disease or defect and would continue to be a danger to others without treatment, but that the person can be adequately controlled and given proper care and treatment if placed on conditional release."

PSRB jurisdiction on the ground that he was no longer affected by a mental disease or defect. Based on the evidence admitted at that hearing, PSRB, again relying on the criteria of DSM III-R, found that petitioner was affected by the mental disease or disorder of pedophilia and ordered that he remain committed. It did not find that he continued to have an organic brain disorder. On judicial review, the Supreme Court held that, because PSRB adopted the relevant rule before the issuance of DSM III-R, an earlier edition, DSM III, applied to petitioner. It noted that the criteria for pedophilia were different in the two editions and therefore remanded the case to the PSRB to apply the criteria of DSM III. *Osborn v. PSRB*, 325 Or 135, 143-47, 934 P2d 391 (1997). On remand, the PSRB again found that petitioner is affected by pedophilia and ordered his commitment continued.

■     Under DSM III, the diagnostic criteria for pedophilia are:

"A.   The act or fantasy of engaging in sexual activity with prepubertal children is a repeatedly preferred or exclusive method of achieving sexual excitement.

"B.   If the individual is an adult, the prepubertal children are at least ten years younger than the individual. If the individual is a late adolescent, no precise age difference is required, and clinical judgment must take into account the age difference as well as the sexual maturity of the child."[3]

On remand, the PSRB made the following findings to support its ultimate finding that petitioner continues to be affected by pedophilia:[4]

"Exhibit 5 notes that Mr. Osborn indicated during a psychological evaluation performed by Alice Shannon, M.D., that

---

[3] The diagnostic criteria for pedophilia under DSM III-R are:

"A. Over a period of at least six months, recurrent intense sexual urges and sexually arousing fantasies involving sexual activity with a prepubescent child or children (generally age 13 or younger).

"B. The person has acted on these urges, or is markedly distressed by them.

"C. The person is at least 16 years old and at least 5 years older than the child or children in A."

[4] The Board also referred to a psychiatrist's diagnosis of pedophilia. However, that diagnosis was based on the criteria of DSM III-R. The record does not contain a psychiatric or psychological diagnosis that is based on the criteria of DSM III.

all his prior sexually deviant behavior has involved children around the age of 13. He claimed that he set things up so that he can be close to these children. Exhibit 10 indicates that Mr. Osborn was involved in an incident of Attempted Sodomy and Harassment toward a 14-year old boy when he was 19 years of age. Further, the Board found that at the time of the offenses of Sodomy I and Sex Abuse I for which he was placed under the jurisdiction of the Board, Mr. Osborn was 21 years old and the victim of his crimes was at least 10 years younger in that he was a 10-year boy as noted in Exhibit 3. The Board further noted that Dr. Meyer testified that Mr. Osborn has been in the state hospital continuously since his commitment in July of 1989 and thus has had no access to children since that date. However, Exhibit 42 references an incident on the ward during Mr. Osborn's hospitalization where Mr. Osborn made rude, sarcastic sexual remarks about children. Finally, in his own testimony at the hearing, Mr. Osborn admitted that he was a sex offender of children."

Substantial evidence exists to support an agency's findings when "the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). That standard requires us to consider evidence that detracts from PSRB's finding as well as evidence that supports it in determining whether the supporting evidence is substantial. *Norden v. Water Resources Dept.*, 329 Or 641, 647-48, 996 P2d 958 (2000); *Younger v. City of Portland*, 305 Or 346, 356, 752 P2d 262 (1988). As applied to this case, substantial evidence to support the ultimate conclusion that petitioner is *presently* affected by pedophilia under the criteria of DSM III requires evidence from which it can reasonably be inferred that petitioner was involved with children under circumstances that continue to satisfy the criteria of DSM III. *See Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996).

■■ A diagnosis of pedophilia under DSM III, if the person is an adult, requires that the children be both prepubertal and at least ten years younger than the person being diagnosed. DSM III does not expressly define the age of adulthood. However, petitioner points out that the section of DSM III that deals with personality disorders in children and adolescents treats "adult life" as beginning at age 18, which suggests that that age might apply to other references to

adulthood. In addition, treating age 18 as the beginning of adulthood is consistent with Oregon law, under which the age of majority for an unmarried person is 18. ORS 109.510. *See also* ORS 419B.005(2) ("child" for purpose of child abuse reporting statutes mean, an unmarried person under 18 years of age); ORS 653.010(5) ("minor" for purposes of the minimum wage laws is a person under the age of 18). Thus, although DSM III could be more specific, the relevant suggestion in it leads to the same result as general Oregon law. We therefore conclude that an "adult" for purposes of a diagnosis of pedophilia is a person 18 years or older. We examine the substantiality of the evidence supporting PSRB's findings in that light.

According to the record, petitioner first came to the attention of the police as a possible sex offender because of his involvement with a 14-year-old boy in late 1986, when he was 19. Although there are references in the record to other involvements with 13 year olds, the record does not indicate petitioner's age at the time or whether the children were prepubertal. Thus, while PSRB's findings that petitioner indicated that his previous sexually deviant behavior involved children around the age of 13 and that he attempted to sodomize a 14-year-old boy when he was 19 are supported by substantial evidence, they do not support an ultimate finding of pedophilia under the DSM III criteria because there is no basis to conclude that they occurred before petitioner became an adult or that there was a ten-year gap between petitioner's age and that of the victims.

As to the other evidence relied on by the Board, exhibit 42 is a 1993 annual review evaluation. It relates that petitioner

> "[f]rom time to time[] approach[es] other patients sexually * * *[.] In September of last year, [petitioner] was attacked by two peers which appeared to relate to the rude sarcastic sexual remarks he was making about children that were intended to provoke peers. * * * It would appear he knows no other way to get attention [from his peers]."

In other words, those incidents do not reflect acts of fantasizing about sexual activity with prepubertal children to achieve sexual excitement. Finally, the Board's finding that

petitioner admitted that he was a sex offender of children also cannot support a current diagnosis of pedophilia. In fact, petitioner testified:

"[Counsel]: Do you think you're a sex offender to children?

"[Petitioner]: I was.

"[Counsel]: But you don't feel ...

"[Petitioner]: Not now."

In short, to the extent that there is substantial evidence to support PSRB's findings, those findings do not lead to the conclusion that petitioner suffers from pedophilia under the criteria of DSM III. The only known incidents of sexual contact that fit within those criteria involve the same child over a short span of time. There are other incidents of sexual contact, both before and after petitioner's commitment, that do not fit the criteria. However, a diagnosis of pedophilia under DSM III requires that the act or fantasy of engaging in sexual activity with prepubertal children at least ten years younger than the person being diagnosed be the "repeatedly preferred or exclusive method of achieving sexual excitement." PSRB has not made supportable findings that would lead to the conclusion that petitioner meets those criteria, and on this record it could not.

Reversed and remanded with instructions to discharge petitioner from PSRB jurisdiction.