Submitted on record and briefs June 19, 2001, affirmed January 23, 2002

In the Matter of Karl Hegbloom,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

KARL HEGBLOOM,
*Appellant.*

9908-67314; A107732

38 P3d 963

Susan D. Isaacs filed the brief for appellant.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Jas. Jeffrey Adams, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Appellant seeks reversal of an order finding him to be mentally ill and committing him to the Mental Health Division for treatment. He raises two assignments of error. First, he contends that the trial court failed to fulfill its statutory obligation under ORS 426.100(1)(b) to advise him of the nature of the proceedings by which the state sought to commit him. Because we previously rejected that argument in *State v. Buffum*, 166 Or App. 552, 556, 999 P2d 541, *rev allowed* 331 Or 361 (2000), we address only appellant's second assignment of error, which is that the state failed to establish by clear and convincing evidence that he presents a danger to others and that he is unable to provide for his basic personal needs. We affirm.

Appellant is 33 years old and has a history of mental illness for which he has been hospitalized eight or nine times. Appellant is homeless, but he receives Social Security benefits and reports that he currently has a part-time job at Portland State University's computer center. Appellant's last hospitalization occurred after he complained to police that someone was "psychically" controlling his leg while he slept. At the hospital, a mental health investigator prepared a precommitment investigation report detailing appellant's mental condition. The report stated that appellant had delusional and paranoid thoughts and, in the investigator's opinion, that appellant had impaired judgment and grossly poor insight. The report also said that appellant angrily described voices that gave him "impulses to do things like kick children" even though he did not "want to do that kind of thing." When questioned about any homicidal impulses, appellant responded, "I intend to side with the law." The investigator concluded that, although appellant had been able to fend off his "impulses" up to that point, it was becoming increasingly difficult for him to do so. The investigator recommended civil commitment, and the state initiated this proceeding.

At the commitment hearing, appellant testified that "the person who is causing the disturbance [in his head] is probably mentally ill" but that he himself was not. He stated that

"[t]here is someone in this community in Portland that's causing me and others to have fits, emotional fits like temper tantrums. It's like someone else is angry examine [*sic*] causing me to move * * * and trying to make me hit myself and hassle me and things like that. I don't want anything to do with that person. I want them to leave me alone."

Dr. McCubbin, a mental health examiner, questioned appellant during the proceeding. He asked appellant whether the other person ever made him want to kick children. Appellant responded that

"that's something I experienced once or twice in my life walking down the street in a crowd and there is people with baby buggies. And there [are] people around that don't want others to have children. And I don't—I'm just walking by. I don't want anything to do with it. And there is this idea in my mind. It's not me. I don't like it."

Appellant stated that he had been forced to take medication before but it only made things worse, not better. Further, according to appellant, the "best treatment and the only known cure for schizophrenia is a college education." Appellant commented that he would like to receive a college education, but he did not think that he needed any kind of treatment for mental illness. After McCubbin finished questioning appellant, the other mental health examiner, Dr. Mohler, asked appellant about his impulses:

"Q:  So, what are you going to do if you have this spirit or this feeling that someone outside of you is controlling your behavior and having you do things you don't want to do?

"A:  I don't know what to do. That's why I went to the police.

"Q:  Okay. And at this time you feel unable to stop that yourself?

"A:  One man alone is not power against that sort of thing, I think. There is a lot of stuff like it going on in the world, I guess."

Appellant testified that he had never acted on the impulses that he described.

McCubbin and Mohler concluded that appellant suffered from schizophrenia. They both agreed that appellant was a danger to himself and others. McCubbin also believed that appellant was unable to provide for his basic personal needs. McCubbin described appellant as having classic symptoms of thought projection, "projecting his symptoms onto 'someone doing something to him.'" Mohler described appellant as "impulsive with [a] psychotic thought process" and concluded that appellant had "impaired insight with diminished judgment." The trial court found that appellant was a danger to others and unable to provide for his basic personal needs and ordered him committed to the Mental Health Division for treatment.

On appeal, appellant contends that the trial court had insufficient evidence to find that he is a danger to others and is unable to provide for his basic personal needs. On *de novo* review, we find that the state established by clear and convincing evidence that appellant's mental condition causes him to be dangerous to others, and we therefore affirm the commitment order.[1]

To support a finding that appellant presents a danger to others, the record must contain clear and convincing evidence that forms the "foundation for a prediction of future dangerousness." *State v. Lucas*, 31 Or App 947, 950, 571 P2d 1275 (1977). Although appellant's condition has not yet caused him to commit any violent acts, we are persuaded that there is ample evidence in the record to support our finding that his condition is very likely to cause him to harm other people. Appellant lacks any insight into his condition. He does not believe that he has a mental disorder and, even if he did, he believes that the only cure for it would be for him to obtain a college education. He blames an unknown person for causing his problems and has stated that voices make him want to do things, such as kick children, even though he himself does not want to do the things that the voices tell him to do. The pre-commitment investigator commented that controlling those impulses is becoming increasingly difficult for

---

[1] Because we find that appellant is a danger to others, we do not consider whether he is able to provide for his basic personal needs.

appellant. When appellant was asked whether he could control the impulses, he cryptically replied that "[o]ne man alone is not power against that sort of thing, I think." Consistently with that statement, he essentially acknowledged that he needs help from others to control his impulses, which is the reason that he reported to the police that someone was controlling his leg.

In theory, appellant's recognition that he needed help to prevent him from acting on his impulses undercuts the proposition that he was a danger to others at the time of his commitment, because he recognized the danger that his impulses created and took steps to address it. The problem, however, is that appellant rejected the help that the state has to offer to address his condition. Because we find that appellant's condition, if untreated, made him dangerous to others, we conclude that the trial court properly ordered appellant's commitment to the Mental Health Division.

Affirmed.